Tanya E. Moore, SBN 206683
K. Randolph Moore, SBN 106933
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California 95112
Telephone (408) 298-2000
Facsimile (408) 298-6046

Attorneys for Plaintiff
Sydrian Lofton

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SYDRIAN LOFTON,

    Plaintiff,

vs.

BREUNER-PEVARNICK NO. 4, A CALIFORNIA GENERAL PARTNERSHIP, CARLOS JOSE CASAS dba TAQUERIA CARIBE, MENG LY dba DONUT BASKET,

    Defendants.

No. CV11-02252

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)

## I. SUMMARY

1.  This is a civil rights action by plaintiff Sydrian Lofton ("Lofton") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

Blossom Valley Plaza
461 Blossom Hill Road
San Jose, California  95123
(hereafter "Blossom Valley Plaza Common Areas Facility")

Taqueria Caribe
461 Blossom Hill Road
San Jose, California  95123
(hereafter "Taqueria Caribe Facility")

*Lofton v. BREUNER-PEVARNICK NO. 4, A CALIFORNIA GENERAL PARTNERSHIP, et al.*
Complaint

Donut Basket
461 Blossom Hill Road
San Jose, CA 95123
(hereafter "Donut Basket Facility")

Each of the facilities identified above shall be collectively referred to hereinafter as "The Facilities."

2. Pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA"), and related California statutes, Lofton seeks damages, injunctive and declaratory relief, attorney fees and costs, against:

a) BREUNER-PEVARNICK NO. 4, A CALIFORNIA GENERAL PARTNERSHIP (hereafter "Blossom Valley Plaza Common Areas Defendant");

b) CARLOS JOSE CASAS dba TAQUERIA CARIBE (hereafter "Taqueria Caribe Defendants");

c) MENG LY dba DONUT BASKET (hereafter "Donut Basket Defendants").

The above-named defendants are collectively referred to herein as "Defendants."

## II. JURISDICTION

3. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4. Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5. Lofton's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III. VENUE

6. All actions complained of herein take place within the jurisdiction of the United States District Court, Northern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV. PARTIES

7. Blossom Valley Plaza Common Areas Defendants own, operate, and/or lease Blossom Valley Plaza Common Areas Facility, and consist of a person (or persons), firm, and/or corporation.

8. Taqueria Caribe Defendants own, operate and/or lease the Taqueria Caribe Facility, and consist of a person (or persons), firm, and/or corporation.

9. Donut Basket Defendants own, operate and/or lease the Donut Basket Facility, and consist of a person (or persons), firm, and/or corporation.

10. Lofton is confined in a wheelchair. Consequently, Lofton is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

11. Blossom Valley Plaza Common Areas Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

12. The Taqueria Caribe Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

13. The Donut Basket Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

14. Lofton visited these Facilities and encountered barriers (both physical and intangible) that interfered with – if not outright denied – her ability to use and enjoy the goods, services, privileges and accommodations offered at the Facilities.

**BLOSSOM VALLEY PLAZA COMMON AREAS FACILITY**

15. While visiting the Blossom Valley Plaza Common Areas, Lofton personally encountered the following barriers:

a) While attempting to visit the Taqueria Caribe Facility, Lofton could not find a wheelchair accessible route of travel from the sidewalk to the entrance of the Facility and had to navigate her wheelchair through the entire parking lot, travelling dangerously behind parked cars and in lanes of traffic;

b) While attempting to visit the Donut Basket Facility, Lofton could not find an accessible route of travel from the public sidewalk to the entrance of the Facility and had to

*Lofton v. BREUNER-PEVARNICK NO. 4, A CALIFORNIA GENERAL PARTNERSHIP, et al.*
Complaint

1 navigate her wheelchair through the entire parking lot, travelling dangerously behind parked
2 cars and in lanes of traffic;

3     c) Upon leaving the Donut Basket Facility, Lofton was unable to locate an
4 accessible route to the public sidewalk and as a result had to navigate her wheelchair through
5 the entire parking lot, travelling dangerously behind parked cars and in lanes of traffic.

6     16. Lofton was also deterred from visiting Blossom Valley Plaza Common Areas
7 because she became aware that the goods, services, facilities, privileges, advantages, and
8 accommodations were and are unavailable to physically disabled patrons at the Blossom
9 Valley Plaza Common Areas. Lofton continues to be deterred from visiting the Facility
10 because of the future threats of injury created by these barriers due to her physical disabilities
11 including, but not limited to:

12     1) Missing and/or incorrect warning signage is installed at the parking facilities;
13     2) Accessible parking spaces and access aisles are not properly configured and/or
14     exceed the maximum slope allowed;
15     3) Parking spaces and/or access aisles reserved for persons with disabilities are
16     improperly marked and/or identified;
17     4) There is no properly configured and/or identified accessible route connecting
18     accessible buildings, accessible facilities, accessible elements and accessible spaces
19     that are on the site with public sidewalks.

20 These barriers prevented Lofton from enjoying full and equal access at the Blossom
21 Valley Plaza Common Areas. Lofton enjoys the goods and services offered at the Blossom
22 Valley Plaza Common Areas, lives in San Jose, and will return to the Blossom Valley Plaza
23 Common Areas once the barriers are removed.

24     17. Blossom Valley Plaza Common Areas Defendants knew or should have known
25 that these elements and areas of the Blossom Valley Plaza Common Areas were inaccessible,
26 violate state and federal law, and interfere with (or deny) access to the physically disabled.
27 Moreover, Blossom Valley Plaza Common Areas Defendants have the financial resources to
28 remove these barriers from the Blossom Valley Plaza Common Areas (without much difficulty

*Lofton v. BREUNER-PEVARNICK NO. 4, A CALIFORNIA GENERAL PARTNERSHIP, et al.*
Complaint

or expense), and make the Blossom Valley Plaza Common Areas accessible to the physically disabled. To date, however, Blossom Valley Plaza Common Areas Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

18. At all relevant times, Blossom Valley Plaza Common Areas Defendants have possessed and enjoyed sufficient control and authority to modify the Blossom Valley Plaza Common Areas to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. Blossom Valley Plaza Common Areas Defendants have not removed such impediments and have not modified the Blossom Valley Plaza Common Areas to conform to accessibility standards. Blossom Valley Plaza Common Areas Defendants have intentionally maintained the Blossom Valley Plaza Common Areas in its current condition and have intentionally refrained from altering the Blossom Valley Plaza Common Areas so that it complies with the accessibility standards.

**TAQUERIA CARIBE FACILITY**

19. While visiting the Taqueria Caribe Facility, Lofton personally encountered the following barriers:

a) While attempting to visit the Taqueria Caribe Facility Lofton could not find a wheelchair accessible route of travel from the sidewalk to the entrance of the Facility and had to navigate her wheelchair through the entire parking lot, travelling dangerously behind parked cars and in lanes of traffic;

b) While inside the facility Lofton could not reach the counter because it was too high for her wheelchair;

c) Lofton could not find any accessible seating inside or outside the Facility and was forced to eat while seated outside the Facility in her wheelchair holding food on her lap;

d) Lofton could not wash her hands because the restroom provided inside the Facility was not wheelchair accessible and did not provide sufficient clearance for her wheelchair.

20. Lofton was also deterred from visiting Taqueria Caribe Facility because she became aware that the goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to physically disabled patrons at the Taqueria Caribe Facility. Lofton continues to be deterred from visiting the Facility because of the future threats of injury created by these barriers due to her physical disabilities including, but not limited to:

1) Missing and/or incorrect warning signage is installed at the parking facilities;
2) Accessible parking spaces and access aisles are not properly configured and/or exceed the maximum slope allowed;
3) Parking spaces and/or access aisles reserved for persons with disabilities are improperly marked and/or identified;
4) There is no properly configured and/or identified accessible route connecting accessible buildings, accessible facilities, accessible elements and accessible spaces that are on the site;
5) There is insufficient clearance provided for the wheelchair access inside the facility;
6) There is no accessible register/service counter/check stand provided and/or the register provided is not properly identified/configured;
7) There is no accessible restroom provided.

These barriers prevented Lofton from enjoying full and equal access at the Taqueria Caribe Facility. Lofton enjoys the goods and services offered at the Taqueria Caribe Facility, lives in San Jose, and will return to the Taqueria Caribe Facility once the barriers are removed.

21. Taqueria Caribe Facility Defendants knew or should have known that these elements and areas of the Taqueria Caribe Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Taqueria Caribe Facility Defendants have the financial resources to remove these barriers from the Taqueria Caribe Facility (without much difficulty or expense), and make the Taqueria Caribe Facility accessible to the physically disabled. To date, however, Taqueria Caribe Facility Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

*Lofton v. BREUNER-PEVARNICK NO. 4, A CALIFORNIA GENERAL PARTNERSHIP, et al.*
Complaint

22. At all relevant times, Taqueria Caribe Facility has possessed and enjoyed sufficient control and authority to modify the Taqueria Caribe Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. Taqueria Caribe Facility Defendants have not removed such impediments and have not modified the Taqueria Caribe Facility to conform to accessibility standards. Taqueria Caribe Facility Defendants have intentionally maintained the Taqueria Caribe Facility in its current condition and have intentionally refrained from altering the Taqueria Caribe Facility so that it complies with the accessibility standards.

**DONUT BASKET FACILITY**

23. While visiting the Donut Basket Facility, Lofton personally encountered the following barriers:

a) While attempting to visit the Donut Basket Facility Lofton could not find a wheelchair accessible route of travel from the sidewalk to the entrance of the Facility and had to navigate her wheelchair through the entire parking lot, travelling dangerously behind parked cars and in lanes of traffic;

b) Lofton was not able to find any accessible seating inside the Donut Basket Facility and ate her food while seated in her wheelchair right outside the facility on the sidewalk;

c) Lofton was not able to wash her hands because the route to the public restroom was not wide enough for her wheelchair;

d) Upon leaving the Donut Basket Facility Lofton was unable to locate an accessible route to the public sidewalk and as a result again had to navigate her wheelchair through the entire parking lot, travelling dangerously behind parked cars and in lanes of traffic.

24. Lofton was also deterred from visiting the Donut Basket Facility because she became aware that the goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to physically disabled patrons at the Donut Basket Facility. Lofton

*Lofton v. BREUNER-PEVARNICK NO. 4, A CALIFORNIA GENERAL PARTNERSHIP, et al.*
Complaint

continues to be deterred from visiting the Donut Basket because of the future threats of injury created by these barriers due to her physical disabilities including, but not limited to:

1) Missing and/or incorrect warning signage is installed at the parking facilities;
2) Accessible parking spaces and access aisles are not properly configured and/or exceed the maximum slope allowed;
3) Parking spaces and/or access aisles reserved for persons with disabilities are improperly marked and/or identified;
4) There is no properly configured and/or identified accessible route connecting accessible buildings, accessible facilities, accessible elements and accessible spaces that are on the site;
5) There is no accessible seating provided for a wheelchair inside the facility;
6) There is no accessible register counter/check stand provided and/or the register provided is not properly identified/configured;
7) There is no accessible restroom provided.

These barriers prevented Lofton from enjoying full and equal access at the Donut Basket Facility. Lofton enjoys the goods and services offered at the Donut Basket Facility, lives in San Jose, and will return to Donut Basket Facility once the barriers are removed.

25. Donut Basket Facility Defendants knew or should have known that these elements and areas of the Donut Basket Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Donut Basket Facility Defendants have the financial resources to remove these barriers from the Donut Basket Facility (without much difficulty or expense), and make the Donut Basket Facility accessible to the physically disabled. To date, however, Donut Basket Facility Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

26. At all relevant times, the Donut Basket Facility has possessed and enjoyed sufficient control and authority to modify the Donut Basket Facility, to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility

Guidelines and Title 24 regulations. Donut Basket Facility Defendants have not removed such impediments and have not modified the Donut Basket Facility to conform to accessibility standards. Donut Basket Facility Defendants have intentionally maintained the Donut Basket Facility in its current condition and have intentionally refrained from altering the Donut Basket Facility so that it complies with the accessibility standards.

## VI. FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

27. Lofton incorporates the allegations contained in paragraphs 1 through 26 for this claim.

28. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

29. Defendants discriminated against Lofton by denying her "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

#### Failure to Remove Architectural Barriers in an Existing Facility

30. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

31. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

32. Here, Lofton alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

33. In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### Failure to Design and Construct and Accessible Facility

34. Lofton alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III or the ADA.

35. The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that are not readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

36. Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Lofton – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

37. Lofton alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

38. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

//

---

[1] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Lofton v. BREUNER-PEVARNICK NO. 4, A CALIFORNIA GENERAL PARTNERSHIP, et al.*
Complaint

39.   Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Lofton – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

40.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

41.   Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

42.   Lofton seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

43.   Lofton also seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

### VII.   SECOND CLAIM
### Disabled Persons Act

44.   Lofton incorporates the allegations contained in paragraphs 1 through 43 for this claim.

45.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

46.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

47. Both sections specifically incorporate (by reference) an individual's rights under the ADA. *See* Civil Code §§ 54(c) and 54.1(d).

48. Here, Defendants discriminated against the physically disabled public – including Lofton – by denying them full and equal access to the Facility. Defendants also violated Lofton's rights under the ADA, and therefore, infringed upon or violated (or both) Lofton's rights under the Disabled Persons Act.

49. For each offense of the Disabled Persons Act, Lofton seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

50. Lofton also seeks to enjoin Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and costs incurred under California Civil Code §§ 54.3 and 55.

## VIII. THIRD CLAIM

### Unruh Civil Rights Act

51. Lofton incorporates the allegations contained in paragraphs 1 through 51 for this claim.

52. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

53. California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

54. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

55. Defendants' aforementioned acts and omissions denied the physically disabled public – including Lofton – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

*Lofton v. BREUNER-PEVARNICK NO. 4, A CALIFORNIA GENERAL PARTNERSHIP, et al.*
Complaint

56. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Lofton by violating the Unruh Act.

57. Lofton was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

58. Lofton also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## IX. FOURTH CLAIM

### Denial of Full and Equal Access to Public Facilities

59. Lofton incorporates the allegations contained in paragraphs 1 through 59 for this claim.

60. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

61. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

62. Lofton alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

63. Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Lofton and other persons with physical disabilities. Accordingly, Lofton seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## X. PRAYER FOR RELIEF

WHEREFORE, Lofton prays judgment against Defendants, and each of them, for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.

*Lofton v. BREUNER-PEVARNICK NO. 4, A CALIFORNIA GENERAL PARTNERSHIP, et al.*
Complaint

2. Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.
3. Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.
4. Attorneys' fees, litigation expense, and costs of suit.[2]
5. Interest at the legal rate from the date of the filing of this action.
6. For such other and further relief as the Court deems proper.

Dated: May 5, 2011                MOORE LAW FIRM, P.C.

/s/ Tanya E. Moore
Tanya E. Moore
Attorneys for Plaintiff,
Sydrian Lofton

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Lofton v. BREUNER-PEVARNICK NO. 4, A CALIFORNIA GENERAL PARTNERSHIP, et al.*
Complaint